IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                     )
                                           )
KUECKER EQUIPMENT COMPANY,                 )   Case No. 05-49715
                                           )
            Debtor.                        )

ORDER SUSTAINING IN PART, AND OVERRULING IN PART,
MOTION TO ENFORCE AUTOMATIC STAY AND DENYING DEBTOR'S REQUEST FOR
RECOVERY OF DAMAGES ARISING FROM GARVEY'S STAY VIOLATION

Debtor Kuecker Equipment Company filed a Motion to Enforce the Automatic Stay seeking an Order, *inter alia*, declaring that a certain lawsuit filed in state court by Tom Garvey against the Debtor's principals and an affiliated company violates the automatic stay in this case. For the reasons that follow, the Motion is SUSTAINED in part and OVERRULED in part. Subsequent to the hearing on the Motion to Enforce Automatic Stay, Debtor filed a separate Request for Recovery of Damages Arising from Garvey's Stay Violation. That Request is DENIED.

Factual Background

Prior to the filing of this bankruptcy case, Garvey filed a lawsuit in the Circuit Court of Cass County, Missouri, against the Debtor and an affiliated company, Key Management Systems, Inc. (the "Prepetition Litigation").[1] The Prepetition Litigation involved claims for breach of an employment contract dated September 17, 1999, between Garvey and the Debtor and Key Management. The case was tried to a jury, which returned a verdict in favor of Garvey for non-payment of commissions and failing to tender shared of the Debtor's stock

---

[1] *Garvey v. Kuecker Equipment Co., Inc., et al.*, Case No. CV104-504CC.

to Garvey pursuant to the employment contract. On August 25, 2005, the Cass County Circuit Court entered a Judgment, based on the jury's verdict, in the total amount of $2,331,336.28. The Debtor appealed the Judgment and Garvey filed a cross-appeal. That matter is currently pending in the Missouri Court of Appeals.[2]

Not long after the verdict, Debtor filed its voluntary Chapter 11 bankruptcy petition on October 14, 2005. Thereafter, Garvey filed a second lawsuit, this time in the Circuit Court for St. Louis County, Missouri, against Stanley J. Kuecker ("Stan"), Alice L. Kuecker ("Alice"), James K. Kuecker ("James"), Chris Kuecker (Chris), Stanley N. Kuecker a/k/a/ Nick Kuecker ("Nick"), and Bilt Industries, Inc. (the "Postpetition Litigation").[3] Stan is the sole owner and president of the Debtor. Alice, James, and Nick are officers of the Debtor, and Chris is the wife of James. Bilt Industries, Inc. is an affiliate of the Debtor.

The original Petition in the Postpetition Litigation asserted five counts against the various defendants in that action. To summarize the facts alleged by Garvey in support of his Postpetition Litigation,[4] Garvey states that he was hired by the Debtor and Key Management Systems pursuant to a written contract which provided that he was to receive

---

[2] By Order entered December 14, 2005, this Court granted relief from that automatic stay for the limited purpose of allowing both the Debtor and Garvey to proceed with their appeals from the Cass County Judgment.

[3] *Garvey v. Kuecker, et al., Case No. 05CC-5874.*

[4] The facts that follow, relating to the prepetition dealings between Garvey and the various defendants in the state court litigation, are a summary of the facts as alleged by Garvey in the Petition filed in the Postpetition Litigation, many of which are disputed by the Debtor and other parties. They are provided here only to outline the dispute between the parties and do not constitute my findings of fact.

2

certain commissions for his work with certain listed clients that Garvey had brought in to the companies, based on a percentage of gross revenue less direct costs associated with the particular customer. He was also to be paid a commission based on continuing net sales from jobs received from those clients, even after he ceased to be employed by the Debtor or Key Management Systems. Finally, the contract provided that, in the event that purchase orders from Garvey's clients reached $16,000,000, the Debtor and Key Management Systems were required to tender 33% of their shares of stock to Garvey.

The Debtor and Key Management Systems fired Garvey in October 2003 and failed to pay him for his commissions earned both while he was employed and after he was fired. They also failed to tender the stock to him after purchase orders from Garvey's clients exceeded $16,000,000. As noted above, a jury found that Garvey was entitled to a net judgment of $2,555,635.48 for the unpaid commissions and stock.

In the Postpetition Lawsuit, Garvey asserts that the individual defendants took various actions in an effort to, at least in part, prevent Garvey from recovering his commissions and stock. Among other things, Garvey asserts that Stan would regularly sell the Debtor's inventory for cash and keep the cash for his personal benefit. Stan would not report these cash transactions on his personal tax returns and would manipulate the inventory on the Debtor's financial statements and books. Garvey alleges Stan filed false federal, state, and unemployment tax returns, as well as false social security, Medicare, and workers' compensation returns for the Debtor and Key Management. Stan also had the Debtor and Key Management pay himself hundreds of thousands of dollars per year in dividends and

distributions, and pay significant salaries to himself, James, Nick, Alice, and Chris, all in order to strip the companies of assets. Stan also prepared and filed false insurance claims for losses to the Debtor's property allegedly damaged in fires or cave-ins at the Debtor's warehouse facility. Garvey also alleges Stan instructed employees to do work that personally benefitted himself and his sons, James and Nick, and that this work was billed to customers of the Debtor. Further, Garvey asserts Stan formed Bilt Industries in October 2004 and transferred assets, customers, money, and business from the Debtor and Key Management Systems to Bilt Industries without reasonable compensation. As to Garvey's customers' accounts, Stan and the other individual defendants prepared false quarterly commission reports, overstating expenses and instructing employees to falsely bill time to Garvey's jobs, in an effort to reduce Garvey's commissions.

In Counts I and II of the original Petition filed in the Postpetition Litigation, Garvey asserted that the Debtor and Key Management Systems committed the numerous improper, tortious, or fraudulent acts described above, which were instigated by Stan, Alice, Nick, James, and Chris, by virtue of their domination and control of the Debtor. Garvey asserted that these acts were done, at least in part, to cheat Garvey out of the commissions and stock distributions he was entitled to. Count I sought to pierce the corporate veil as to Stan, and Count II sought to pierce the corporate veil as to Stan, Alice, Nick, James, and Chris, and to make them personally liable for the damages Garvey incurred in his dealings with the Debtor and Key Management Systems.

Count III of the original Petition alleged that the Debtor engaged in various fraudulent

transfers from the Debtor company and Key Management Systems to the individual defendants and the newly-formed affiliate, Bilt Industries, at the direction of each of the individual defendants and Bilt Industries.  Garvey asserted that these transfers were done with the intent to hinder, delay, or defraud Garvey and prevent him from recovering the money owed to him.  He requested, among other things, that the transfers be avoided to the extent necessary to satisfy Garvey's claims and that the court appoint a receiver to take custody of the various defendants' assets.

Count IV alleged that the Debtor provided fraudulent reports to Garvey relating to the commissions earned under the employment agreement, all at the hands of the individual defendants.  This count alleged that Stan, Alice, and Chris prepared the reports and instructed employees to falsely bill expenses to Garvey's accounts.  He requested a judgment for actual and punitive damages against the individual defendants for fraud.

Count V alleged that the Debtor fraudulently and deceitfully failed to send commission reports to Garvey after he was fired, and concealed the continuing commissions owed by the Debtor to Garvey, all at the hands of the individual defendants.  He sought a judgment for actual and punitive damages based on fraud.

On December 22, 2005, the Debtor filed the instant Motion to Enforce Automatic Stay, asserting that Garvey's filing and pursuing the Postpetition Litigation violated the automatic stay in the Debtor's bankruptcy case, even though the Debtor was not named as a defendant in that action.  The Motion asked the Court to rule that the filing of the Petition violated 11 U.S.C. § 362, that the claims asserted in the Petition were estate property, that

Garvey has no standing to prosecute the claims asserted in the Petition, that the filing of the Petition was void *ab initio*, and further sought an order "entering relief in favor of the Debtor to remedy the stay violation."[5]

On January 9, 2006, Garvey filed a request for leave to amend his Petition in the St. Louis County Court, along with a First Amended Petition. The St. Louis County Court granted Garvey's request and permitted the First Amended Petition to be filed. The First Amended Petition dropped the original Counts I-III for piercing the corporate veil and fraudulent transfers, re-designated the previous Counts IV and V (alleging fraud by the individual defendants) as Counts I and II, and added a new count, Count III, for tortious interference with business expectancy.

Thus, in Count I of the First Amended Petition, entitled "Fraud," Garvey asserts that Stan, Alice, and Chris, with the knowledge and approval of James and Nick, falsely applied charges and billed time to Garvey's jobs in order to falsely increase the expenses to Garvey's jobs and reduce his commissions. They each represented to Garvey that the commission reports they gave him were accurate, even though they knew they were false. He asserts that the individual defendants made the representations with the intent that Garvey rely on them, that Garvey did rely on them, and that his reliance was justifiable. He also asserts that the individual defendants took these actions so that the money to be distributed to themselves would be increased. He seeks actual and punitive damages, jointly and severally, from each

---

[5] Doc. No. 47, at 15.

of the individual defendants.

In Count II, entitled "Fraud and Deceit," Garvey asserts, in essence, that the individual defendants decided they would completely hide the ongoing commissions due to Garvey for the second quarter of 2005 and thereafter, and that they stopped sending his commission reports to him altogether. He asserts that their efforts to hide his commissions were done with the specific intent to harm him and to personally profit by taking the money that was owed to Garvey for themselves. He seeks actual and punitive damages, jointly and severally, from each of the individual defendants.

In Count III, entitled "Tortious Interference with Business Expectancy," Garvey alleges that he had a contractual relationship with the Debtor and Key Management and that the individual defendants and Bilt Industries, separately and in agreement with each other, intentionally interfered with the contract and caused the Debtor and Key Management to breach the contract. He again asserts the individual defendants caused the Debtor and Key Management to fail to pay the commissions and stock owed to him. He asserts that the defendants, individually and in concert, tortiously interfered with the contract and Garvey's expectancies in order to profit themselves and injure Garvey.

## The Automatic Stay

The issue here is whether the causes of action contained in the original Petition and the First Amended Petition in the Postpetition Litigation, asserted against the principals and affiliate of the Debtor, violate the automatic stay imposed by the Debtor's bankruptcy case.

The Debtor asserts that each of the Counts, in both the original Petition and the First Amended Petition, violate the stay because they are claims belonging to the Debtor and because the Debtor must necessarily be found liable before the individual defendants can be. Garvey, in effect, conceded that the original Counts I through III violated the stay, which is why he filed the First Amended Petition to drop them, but maintains that the counts alleged in the First Amended Petition are direct causes of action against the individual defendants and therefore do not violated the Debtor's automatic stay.

Section 362 of the Bankruptcy Code provides, in relevant part, that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of –

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]
>
> * * *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.[6]

The Debtor asserts that all of the causes of action asserted in the Postpetition Litigation are premised on the Debtor's alleged tortious conduct. Thus, to maintain any action against the individual defendants, Garvey must proceed under a piercing the corporate veil or alter ego theory. According to the Debtor, such actions belong to the estate, and not to Garvey as an individual creditor of the Debtor. As to the original Counts I-III relating to

---

[6] 11 U.S.C. § 362(a)(1) and (3).

alleged fraudulent conveyances and the individual defendants' other alleged improper actions in falsifying records and stripping the Debtor of assets and the like, I agree.

"Only a trustee has standing to assert pre-petition claims that are property of the debtor's estate under 11 U.S.C. § 541(a)(1)."[7] State law determines whether the cause of action belongs to a debtor's estate,[8] and no one disputes that Missouri law applies here. "It is well settled under Missouri law that a corporation is the only party that may recover for its direct injuries."[9]  "[T]he focus of whether the cause of action belongs to the corporation should center on the relationship between the alleged injury and the corporation."[10]  If the corporation suffers the direct injury that results from a principal's malfeasance, then only the corporation has standing to assert claims arising out of the malfeasance.[11]

> [I]t is clear that causes of action belonging to the *debtor* at the commencement of the case are included within the definition of property of the estate. *E.g.,* 4 Collier on Bankruptcy ¶ 541.10[1], at 541-62 (15th ed. 1986). Any of these actions that are unresolved at the time of the filing then pass to the trustee as representative of the estate, who has the responsibility under Section 704(1) of asserting them whenever necessary for collection or reservation of the estate. *Id.* ¶ 704.02, at 704-6 to 7. For example, these sections give the trustee authority to bring an action for damages on behalf of a debtor corporation against corporate principals for alleged misconduct, mismanagement, or breach of fiduciary duty, because these claims could have been asserted by the debtor

---

[7] *In re Bridge Information Sys., Inc.*, 325 B.R. 824, 831 (Bankr. E.D. Mo. 2005).

[8] *Id.*

[9] *Id.* (citations omitted).

[10] *Id.* at 831.

[11] *Id.* at 832.

9

corporation, or by its stockholders in a derivative action.[12]

The causes of action asserted in Counts I and II of the original Petition allege that the individual defendants sold the Debtor's inventory for cash and kept the cash for their personal benefit; manipulated the inventory on the Debtor's financial statements and books; filed false federal, state, and unemployment tax returns, as well as false social security, Medicare, and workers' compensation returns for the Debtor and Key Management; paid themselves hundreds of thousands of dollars per year in dividends, distributions, and salaries in order to strip the companies of assets; instructed employees to do work that personally benefitted themselves and billed these costs to customers of the Debtor; and formed Bilt Industries in October 2004 and transferred assets, customers, money, and business from the Debtor and Key Management Systems to Bilt Industries without reasonable compensation. If these allegations are true, then the Debtor was directly harmed by these actions and it could pursue causes of action against the individual defendants.[13]  Similarly, Count III of the original Petition, alleging that the individual defendants transferred money and assets to

---

[12] *Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*, 816 F.2d 1222, 1225 (8th Cir. 1987) (emphasis in original).

[13] As noted above, these counts were pled as veil piercing claims.  As the Bankruptcy Court in *Bridge Information Systems* noted, the Eighth Circuit in *Ozark Restaurant Equipment* held generally that only third-party creditors may bring a veil piercing cause of action under Arkansas law, but *Ozark* does not stand for the broad proposition that only a creditor may bring a veil piercing claim in all circumstances. *Bridge Information Sys.*, 325 B.R. at 833.  "Rather, the proper analysis must focus upon whether the veil piercing claim belonged to the corporation on the petition date under applicable state law so that it became property of the corporation's estate under 11 U.S.C. § 541(a)." *Id.* (citing *Kalb, Voorhis & Co. v. Am. Fin. Corp*, 8 F.3d 130, 134 (2nd Cir. 1993)).  The *Ozark Restaurant* case was based on Arkansas law, which is not applicable here.

themselves and Bilt Industries, are actions that directly harmed the Debtor and, therefore, it is an action clearly belonging to the Debtor and not to Garvey as an individual creditor of the Debtor. Accordingly, even though Garvey may have been injured by these actions as well, these causes of action belong to the Debtor.[14]

In sum, if the allegations relating to the original Counts I through III are true, they belong to the Debtor and any recovery for damages caused by them should benefit all of the Debtor's creditors, and not just Garvey.[15] Accordingly, I find that the filing of the Petition asserting the original Counts I through III violated the automatic stay in the Debtor's bankruptcy case.

As to the current Counts I through III, Garvey asserts that those causes of action are particular to him and therefore do not violate the automatic stay in the Debtor's bankruptcy case. The Debtor asserts that officers and directors may not be held independently liable without piercing the corporate veil or finding liability on the part of the Debtor and, therefore, any action brought by a third party against them violates the automatic stay.

In Missouri, merely holding a corporate office does not subject one to personal

---

[14] While the filing of the original Petition did violated the automatic stay, as found here, that does not mean that the serious allegations in such Petition are not true. Indeed, if Garvey were to prove such allegations in this Court, there could well be a basis for appointment of a Chapter 11 trustee, 11 U.S.C. § 1104, or denial of confirmation of a Chapter 11 plan proposed by the Debtor, 11 U.S.C. § 1129(a)(3) and (11).

[15] *Accord S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153-54 (5th Cir. 1987) (holding that allowing an individual creditor's action to proceed against the debtor's principals under a piercing the corporate veil theory would undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly); *see also In re Colonial Realty Co.*, 980 F.2d 125, 131-32 (2nd Cir. 1992).

11

liability for the misdeeds of the corporation.[16] However, corporate officers may be held individually liable for tortious corporate conduct if they have actual or constructive knowledge of, and participated in, an actionable wrong.[17] This is true even when the officers are acting in their corporate capacity.[18] In an action for inducing a breach of contract, a corporate officer is protected from individual liability, "provided no improper means are used, the defendant acts in good faith to protect the corporation[,] and does not act for his own benefit."[19] Further, "[a]n individual is not protected from liability simply because the acts constituting the tort were done in the scope and course, and pertained to, the duties of his employment."[20] In other words, a manager who controls the operations of the corporation, and directs the wrong, may be held individually liable.[21]

In his First Amended Petition, Garvey has dropped all of the allegations and causes of action asserting sabotage or damage to the Debtor itself. The Counts remaining in the First Amended Petition relate only to the actions taken by the individual defendants in

---

[16] *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 590 (Mo. Ct. App. 2000); *Grothe v. Helterbrand*, 946 S.W.2d 301, 304 (Mo. Ct. App. 1997).

[17] *Id.*; *Lynch v. Blanke Baer & Bowley Krimko, Inc.*, 901 S.W.2d 147, 153 (Mo. Ct. App. 1995).

[18] *Id. See also Osterberger v. Hites Constr. Co.*, 599 S.W. 2d 221, 229 (Mo. Ct. App. 1980).

[19] *Lynche v. Blanke Bear & Bowley Krimko*, 901 S.W.2d at 153.

[20] *State ex rel. the Doe Run Resources Corp v. Neill*, 128 S.W.3d 502, 505 (Mo. 2004) (en banc) (internal quotemarks omitted).

[21] *Id.* at 507.

connection with the contract with Garvey, namely, that they falsified the records relating to his commissions and caused the breach of the contract with him. As outlined above, in Missouri, he need not pierce the corporate veil in order to seek personal liability against the individual defendants under certain circumstances.

Accordingly, because Missouri law provides a mechanism whereby Garvey can seek personal liability against the individual defendants as principals of the Debtor without piercing the corporate veil, and he is no longer pursuing a cause of action belonging to the Debtor, I find that Counts I through III of the First Amended Petition do not violate the automatic stay in the Debtor's bankruptcy case. Whether Garvey has sufficiently pled a cause of action against the individual defendants in his First Amended Petition, and whether he can prove them, are issues for the Circuit Court of St. Louis County to determine.

## Damages for Violation of the Automatic Stay

Although I find that the First Amended Petition does not violate the automatic stay, as discussed above, the original Counts I through III for piercing the corporate veil and fraudulent transfers did violate the stay. The Debtor seeks damages from Garvey and his counsel for the attorneys fees incurred by Debtor as a result of this violation of the automatic stay. A bankruptcy court may award damages to the injured party for a willful violation of the automatic stay pursuant to the court's civil contempt power embedded in § 105 of the Bankruptcy Code.[22] However, the Debtor failed to present any evidence of damages at the

---

[22] *In re A & J Auto Sales, Inc.*, 223 B.R. 839, 844 (D. N.H. 1998); *In re Payless Cashways, Inc.*, 254 B.R. 746, 751 (Bankr. W.D. Mo. 2000).

hearing on the Motion; instead, at the hearing, counsel for the Debtor requested that he be allowed to offer such evidence at another hearing, saying that he would not know the precise amount of fees incurred until he knew how long he actually spent at the hearing. Subsequent to the hearing, Debtor filed a separate Request for Recovery of Damages Arising from Garvey Stay Violations[23] seeking attorneys fees and costs of $22,553.50. In his Response to such Request, Garvey contends that Debtor is not entitled to damages but that, in any event, the award sought is not reasonable. Parties routinely present evidence regarding attorneys fees at the hearing on the underlying motion, often estimating the amount of time to be spent at the hearing or requesting to supplement the evidence to include the time spent at the hearing. Here, the original Motion sought an order "[e]ntering relief in favor of Debtor to remedy the stay violation." A hearing was set on such Motion, so Debtor should have been prepared to prove up his damages at such hearing, if an award of damages was sought to remedy the stay violation. The Debtor, however, presented no evidence at all. Accordingly, the Debtor's request for damages is DENIED.[24]

For the foregoing reasons, the Motion to Enforce Automatic Stay is SUSTAINED in part and OVERRULED in part. Debtor's Request for Recovery of Damages Arising from

---

[23] Doc. No. 65.

[24] *Accord In re Payless Cashways*, 254 B.R. at 751 (denying the debtor's request for attorneys' fees as a sanction for violation of the discharge injunction because the debtor failed to provide direct proof of the amount of attorney's fees it incurred as a result of the violation of the discharge injunction); *In re A & J Auto Sales*, 223 B.R. at 845 (affirming the bankruptcy court's denial of damages because the violation of the stay was in good faith and the debtor failed to present evidence of actual damages).

Garvey's Stay Violation is DENIED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: February 6, 2006